UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOODZ INTERNATIONAL, LLC, et al.,

    Plaintiffs,

v.                                         Case No. 11-15106

RICHARD TOSCHIADDI, et al.,

    Defendants.
_____/

**OPINION AND ORDER DENYING DEFENDANTS'
"MOTION TO DISMISS (FRCP 12(b)(3)) OR TO TRANSFER VENUE"**

Pending before the court is Defendants' motion to dismiss this action for improper venue under Federal Rule of Civil Procedure 12(b)(3) or, in the alternative, to transfer this action to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a). The motion has been fully briefed, and the court concludes a hearing is not necessary. *See* E.D. Mich. LR 7.1(f)(2). For the reasons stated below, the court will deny the motion.

**I. BACKGROUND**

This dispute arises from a failed franchisee/franchisor relationship between Defendants and Plaintiff HOODZ International, LLC ("HOODZ"), the Michigan-based franchisor of HOODZ commercial kitchen exhaust cleaning businesses. (Am. Compl. ¶¶ 1, 13.) Throughout 2010 and 2011, Defendants and HOODZ entered into multiple Franchise Agreements allowing Defendants to open and operate several HOODZ franchises in Orange County, California, and San Diego, California. (*Id.* ¶¶ 21-24, Ex. A-C.) In conjunction with the first such Franchise Agreement, Defendants Richard

Toschiaddi, Ginger Toschiaddi, and Trenches, Inc., financed the purchase of a vehicle and other equipment necessary for the operation of the franchises by executing a Vehicle Note, Security Agreement, and Guaranty now held by Plaintiff Belfor Franchise Group, LLC ("BFG").  (*Id.* ¶¶ 35-39, Ex. D-G.)

The parties conducted the bulk, if not all, of their business dealings remotely.  All contracts between the parties were negotiated and signed by HOODZ's representatives in Michigan and by Defendants in California.  (*See id.* Ex. A-G.)  Plaintiffs allege that, during the two-year franchise relationship, HOODZ provided multiple services from its Ann Arbor, Michigan, headquarters to Defendants in California.  These consisted of: "initial training and periodic ongoing training," (Hughes Decl. ¶ 10(a), Dkt. # 11-2), including a five-day training session in Ann Arbor attended by Defendant Richard Toschiaddi in April 2010, (R. Toschiaddi Decl. ¶ 7, Dkt. # 9-2); "continuing consultation and advice" concerning the operation of Defendants' franchises, (Hughes Decl. ¶ 10(b)); "advertising assistance," (*id.* ¶ 10(c)); and outsourcing of business from "large regional and national customers" that were solicited and procured by HOODZ, (*id.* ¶ 12).  In turn, Defendants electronically transmitted customer and sales reports, as well as fees owed, to HOODZ in Ann Arbor.  (*Id.* ¶ 11.)

In or around October 2011, HOODZ learned that Defendants Richard Toschiaddi and Dimitri Maraletos had both been convicted of felony-level offenses, facts which provided HOODZ grounds to unilaterally terminate the Franchise Agreements.  (*See* Am. Compl. Ex. A, C, § 12(B)(3), (5).)  HOODZ did so by a notice sent to Defendants on October 14, 2011.  (*Id.* ¶ 53.)  That same day, HOODZ filed suit against Defendants in

this court "seeking to enjoin . . . Defendants' further use of HOODZ federally registered trademarks and confidential information and trade secrets."  (*Id.* ¶ 54.)

After one week of negotiations between HOODZ and Defendants—again conducted remotely in Michigan and California—the parties executed a Settlement Agreement that dismissed HOODZ's pending litigation.  Pursuant to that agreement, Plaintiff HOODZ North America, LLC, ("HOODZ N.A.") purchased Defendants' San Diego franchises (the "San Diego Asset Purchase Agreement"), (*id.* ¶ 61, Ex. I), while Defendants' two Orange County franchises were temporarily reinstated for the limited purpose of resale, (*id.* ¶ 55, Ex. H).  Defendants were to continue operating those franchises according to the terms of the Franchise Agreements for a "Conditional Reinstatement Period" of thirty days while they searched for a buyer.  (*Id.* ¶¶ 57-58.) According to Defendants, they were able to find a buyer, Carol Rankin, who signed a letter of intent to purchase the franchises on October 27, 2011, and attended a HOODZ training event in Ann Arbor on November 17, 2011.  (R. Toschiaddi Decl. ¶¶ 16-17.)

HOODZ unilaterally terminated the Conditional Restatement Period on November 17, 2011, due to Defendants' submission of allegedly incomplete customer reports and revenue reports.  (Am. Compl. ¶¶ 66-68.)  That same day, Plaintiffs HOODZ and HOODZ N.A. initiated this litigation, claiming that Defendants had breached the Settlement Agreement and their continued use of HOODZ trademarks and proprietary information constitutes unlawful infringement, unfair competition, and misappropriation of trade secrets.  (Compl. ¶¶ 61-83, Dkt. # 1.)  Plaintiffs amended their complaint on December 29, 2011, to incorporate Plaintiff BFG's claim that Defendants Richard Toschiaddi, Ginger Toschiaddi, and Trenches, Inc., breached the Vehicle Note and

Security Agreement. (Am. Compl. ¶¶ 93-96, 103-08.) On January 6, 2012, Defendants filed the instant motion to dismiss Plaintiff's suit for improper venue or, alternatively, to transfer the case to the Central District of California.

## II. STANDARD

"The requirements for venue are set by statute, as are the remedies available for improper and inconvenient venue." *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 538 (6th Cir. 2002). For civil actions, venue is proper in a judicial district where: (1) "any defendant resides, if all defendants are residents of the State in which the district is located"; (2) "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated"; or (3) "any defendant is subject to the court's personal jurisdiction with respect to such action," if "there is no district in which an action may otherwise be brought." 28 U.S.C. § 1391(b).

If a district court determines that a case has been brought in the wrong venue, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Federal Rule of Civil Procedure 12(b)(3) provides the procedural vehicle for raising the defense of improper venue. Fed. R. Civ. P. 12(b)(3). On a motion to dismiss under Rule 12(b)(3), "the plaintiff bears the burden of proving that venue is proper. The Court may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." *Audi AG & Volkswagen of Am., Inc. v. Izumi*, 204 F. Supp. 2d 1014, 1017 (E.D. Mich. 2002).

4

When a case is brought in the correct venue, a district court may still transfer it "to any other district or division where it might have been brought," when doing so serves "the convenience of parties and witnesses" and is "in the interest of justice."  28 U.S.C. § 1404(a); *see also United States v. P.J. Dick Inc.*, 79 F. Supp. 2d 803, 806 (E.D. Mich. 2000).  "As the permissive language of the transfer statute suggests, district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' make a transfer appropriate."  *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (quoting *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994)); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).  The moving party bears the burden of demonstrating by a preponderance of the evidence that, "in light of these factors, 'fairness and practicality strongly favor the forum to which transfer is sought.'"  *Amphion, Inc. v. Buckeye Elec. Co.*, 285 F. Supp. 2d 943, 946 (E.D. Mich. 2003) (quoting *Thomas v. Home Depot U.S.A., Inc.*, 131 F. Supp. 2d 934, 936 (E.D. Mich. 2001)).

### III.  DISCUSSION

#### A.  Dismissal for Improper Venue

Defendants primarily argue that venue for this dispute does not properly lie in this court and, as a result, Plaintiffs' suit should be dismissed under Rule 12(b)(3).  Plaintiffs respond that venue is proper pursuant to a forum-selection clause contained in the Settlement Agreement and because "a substantial part of the events or omissions giving rise to the claim occurred" in this judicial district.  *See* 28 U.S.C. § 1391(b).  The court agrees with Plaintiffs, and it will therefore deny Defendants' motion to dismiss.

Plaintiffs rightly contend that Defendants may be foreclosed from objecting to the proprietary of venue in this court. Statutory venue requirements are not jurisdictional and can be waived or forfeited by a defendant. *See* 28 U.S.C. § 1406(b) (stating that venue statute shall not "impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue"). As such, "venue provisions have long been subject to contractual waiver through a valid forum selection agreement." *United States ex rel. Pittsburgh Tank & Tower, Inc. v. G & C Enters., Inc.*, 62 F.3d 35, 36 (1st Cir. 1995); *see also Park Inn Int'l, L.L.C. v. Mody Enters., Inc.*, 105 F. Supp. 2d 370, 376 (D.N.J. 2000) (holding the defendants waived venue objection through valid and binding forum-selection clause in franchise agreement). The Settlement Agreement at issue in this litigation contains a forum-selection clause designating this court as a proper forum for the adjudication of disputes:

> This Agreement shall be construed under the laws fo the State of Michigan, which laws shall control in the event of any conflict of law. Any dispute arising under or relating to this Agreement will be brought and litigated to conclusion in the United States District Court for the Eastern District of Michigan or the state court of general jurisdiction in Washtenaw County, Michigan.

(Settlement Agreement § 20, Dkt. # 7-4, at 49-50; *accord* San Diego Asset Purchase Agreement § 9.5, Dkt. # 7-4, at 102.) As a result, it would appear that Defendants have waived their right to contest venue.

Defendants attempt to avoid this conclusion by asserting that the Settlement Agreement's forum-selection clause is invalid under the California Franchise Relations Act ("CFRA"), which renders void any "provision in a franchise agreement restricting

6

venue to a forum outside this state" when applied to "any claim arising under or relating to a franchise agreement involving a franchise business operating within this state." Cal. Bus. & Prof. Code § 20040.5.  According to Defendants, the CFRA governs here because, by its own terms, it applies to "any franchise where either the franchisee is domiciled in [California] or the franchised business is or has been operated in [California]," *id.* § 20015, and it further provides that "[a]ny condition, stipulation or provision purporting to bind any person to waive compliance with any provision of [the CFRA] is contrary to public policy and void," *id.* § 20010.  This argument is unpersuasive for a number of reasons.

As an initial matter, Defendants fail to articulate why the venue question implicates the CFRA, or any other California law, in the context of this dispute.  The relevant contracts expressly state that they should be interpreted under Michigan law, (*see* Settlement Agreement § 20; San Diego Asset Purchase Agreement § 9.5; Vehicle Note 2, Dkt. # 7-4, at 15; Security Agreement § 7.5, Dkt. # 7-4, at 23), and such choice-of-law clauses are not facially invalid under the CFRA, *see 1-800-Got Junk? LLC v. Superior Court*, 116 Cal. Rptr. 3d 923, 934-36 (Ct. App. 2010).  Additionally, Plaintiffs brought this suit in Michigan, making the relevant inquiry whether enforcement of the forum-selection clause would contravene a strong public policy of *Michigan* as the forum state.  *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) ("A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought . . . .").  "Under these circumstances, California law simply does not come into play, and the question whether enforcement would contravene California policy is not one that the court need consider."

*TGI Friday's Inc. v. Great Nw. Rests., Inc.*, 652 F. Supp. 2d 750, 760 (N.D. Tex. 2009) (determining that section 20040.5 does not make venue in Northern District of Texas improper when franchise agreement at issue "provide[d] that Texas law applies to all matters relating to the agreement, and that Texas is the forum for any disputes relating to the agreement"); *cf. Wong v. PartyGaming Ltd.*, 589 F.3d 821, 826-28 (6th Cir. 2009) (holding that enforceability of forum-selection clauses is an issue of federal law, not state law, even when court is sitting in diversity).

More fundamentally, even if section 20040.5 of the CFRA prevented Plaintiffs from relying on Defendants' apparent consent to venue in this court, that conclusion alone would not make dismissal for improper venue appropriate.  Section 20040.5 typically "is relied on by California courts to void mandatory forum selection clauses that, if enforced, would require the California court to dismiss the suit or transfer it to another forum" and has not been utilized by a court sitting in another state to dismiss or transfer an action.  *TGI Friday's Inc.*, 652 F. Supp. 2d at 760 n.9.  In other words, section 20040.5 "does not guarantee California franchisees that they will litigate disputes in California; it merely ensures that they will have the opportunity to do so." *Big O Tires, LLC v. Felix Bros., Inc.*, 724 F. Supp. 2d 1107, 1114 (D. Colo. 2010).  The court instead defers to the federal venue statute to determine whether venue for this dispute lies in the Eastern District of Michigan.  *Cf. Kerobo*, 285 F.3d at 534-36 (holding that statutory venue requirements, not contractual forum-selection agreements, dictate whether Rule 12(b)(3) dismissal is proper).

In this case, venue is proper if a "substantial part of the events or omissions giving rise to the claim occurred" in this district, as none of the Defendants reside in

8

Michigan. 28 U.S.C. § 1391(b). Despite Defendants' contentions that "there are no acts or omissions alleged by [Plaintiffs] to have taken place in Michigan" and "the vast majority of all the events at issue occurred in California," (Defs.' Mem. Supp. Mot. Dismiss 8, Dkt. # 9), this standard has been met here. Under § 1391(b), venue is proper in "any forum with a substantial connection to the plaintiff's claim." *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998). A plaintiff is not required to "file a complaint 'in the district where the most substantial events giving rise to the claim occurred.' . . . [V]enue may be proper in two or more districts, even though most of the events occurred in only one of the districts." *Capitol Specialty Corp. v. Splash Dogs, LLC*, 801 F. Supp. 2d 657, 671-72 (S.D. Ohio 2011) (quoting *Cunningham v. MEC Enters., Inc.*, No. 10-13409, 2011 WL 1869911, at *2 (E.D. Mich. Apr. 20, 2011)).

Defendants may be correct that, because they operated their HOODZ franchises in California, the most substantial events giving rise to Plaintiffs' claims occurred in another district. However, this district also has a substantial connection to this dispute. All of the relevant contracts underlying Plaintiffs' claims—the Settlement Agreement, the San Diego Asset Purchase Agreement, the Vehicle Note and Security Agreement, and to a lesser extent the original Franchise Agreements—were negotiated and executed by Plaintiffs in Michigan. Defendants submitted to Plaintiffs in Michigan the allegedly incomplete customer and revenue reports giving rise to Plaintiffs' charges that the Settlement Agreement was breached. During the course of the parties' franchise relationship, Plaintiffs provided ongoing support and business referrals to Defendants from Michigan, and Defendants often transmitted reports, funds, and other communications to Plaintiffs in Michigan. These facts alone evince that substantial

9

events giving rise to Plaintiff's complaint occurred in this forum. *See Hardee's Food Sys., Inc. v. Beardmore*, 169 F.R.D. 311, 316-17 (E.D.N.C. 1996) (finding venue proper in franchisor's home state of North Carolina when franchise agreements were executed by franchisor in North Carolina and franchisees' alleged default occurred when they failed to pay royalty fee to franchisor's treasury department in North Carolina). Accordingly, the court will not dismiss this case for improper venue.

### B. Transfer of Venue

Defendants alternatively request that the court transfer this action to the Central District of California for "the convenience of parties and witnesses" and "in the interest of justice" under § 1404(a). Plaintiffs oppose a transfer, once more relying heavily on the Settlement Agreement's forum-selection clause. The court will assume, as Plaintiffs do not contest, that this action "might have been brought" in the Central District of California, 28 U.S.C. § 1404(a), so that the court has discretion to transfer this case based on considerations of convenience and the interest of justice, *see Reese*, 574 F.3d at 320. The court's exercise of this discretion is guided by a number of considerations, including:

> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000). Upon weighing all of these factors, the court determines that Plaintiffs have failed to meet their burden of demonstrating that transfer is warranted.

The crux of Defendants' arguments in favor of transfer rests upon various factors concerning the relative convenience of a California as opposed to a Michigan forum. On this point, Defendants aver that more non-party witnesses reside in California, making the Central District more convenient for those witnesses and more able to compel the appearance of any unwilling witnesses. They also claim that the locus of operative facts is centered in California, where Defendants' alleged trademark infringement, unlawful utilization of HOODZ's trade secrets, and omissions giving rise to breach of the contracts at issue occurred. Furthermore, Defendants maintain that litigation in California will be much more convenient for them. In fact, they contend, litigation in Michigan will be proportionately more difficult for them than litigation in California would be for Plaintiffs, given the relative means of the parties and the expense of transporting relevant evidence and witnesses located in California to Michigan for trial.

Plaintiffs largely disagree, arguing that California would indeed be an inconvenient forum for them, that their witnesses and relevant corporate documents are located in Michigan, and that some of the events at issue—namely, Defendants' submission of allegedly "falsified" corporate records—did occur in Michigan. (Mem. Opp'n Mot. Dismiss 19, Dkt. # 11-1.) This undercuts Defendants' position to some degree, as § 1404(a) is not meant to "merely shift the inconvenience to the plaintiff." *Reed Elsevier, Inc. v. Innovator Corp.*, 105 F. Supp. 2d 816, 821 (S.D. Ohio 2000) (internal quotation marks omitted); *see also Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964) ("Section 1404(a) provides for transfer to a more convenient forum, not a forum likely to prove equally convenient or inconvenient."). And, as Defendants seem to

11

...

acknowledge, the potential forums' familiarity with the governing law does not strongly recommend either court, as issues of Michigan and California law are both likely to arise. (*See* Defs.' Mem. Supp. Mot. Dismiss 10.)

But even if, on balance, the foregoing considerations slightly favor the California venue, they are overcome by the weight accorded Plaintiffs' choice of this forum, bolstered as it is by the Settlement Agreement's forum-selection clause. While not dispositive, "[t]he presence of a forum-selection clause . . . will be a significant factor that figures centrally in the district court's calculus" under § 1404(a). *Ricoh Corp.*, 487 U.S. at 29. Because such clauses are "prima facie valid," *M/S Bremen*, 407 U.S. at 10, "it [is] incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court," *id.* at 18. Although Defendants manage to show that litigation in Michigan may inconvenience them, they simply cannot carry this heavy burden. Nor are their arguments regarding the validity of the forum-selection clause under the CFRA any more availing to the § 1404(a) inquiry than they were in the Rule 12(b)(3) context. Consequently, the court finds that transfer of this litigation to the Central District of California would be inappropriate.

## IV.  CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendants' "Motion to Dismiss (FRCP 12(b)(3)) or to Transfer Venue" [Dkt. # 9] is DENIED.

 s/Robert H. Cleland  
ROBERT H. CLELAND  
UNITED STATES DISTRICT JUDGE

Dated: March 14, 2012

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 14, 2012, by electronic and/or ordinary mail.

       s/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C2 ORDERS\11-15106.HOODZ.DismissTransferVenue.set.wpd